## 58536. SOUTHERN UNITED LIFE INSURANCE COMPANY v. NELSON et al.

McMurray, Presiding Judge.

On June 13, 1977, Frank Allen Nelson borrowed $3,700 from Farmers State Bank to apply toward the purchase of a truck he had purchased Thursday (June 9, 1977) before Monday (June 13, 1977). At that time he purchased credit life insurance from Southern United Life Insurance Company in the amount of $4,795.20, being a three year term policy for a total premium of $263.26 ("life-level" premium — $119.40 and "A & H," "Mo. Benefit" of $133.20, and premium — $143.86). The policy was a group type policy payable "[i]mmediately upon receipt of due proof of the death *by any cause.*" (Emphasis supplied.) He deposited the sum of $5,700 in the bank ($3,700 proceeds from the loan and $2,000 cash), agreeing to repay the bank $4,795.20 which included the $263.26 for the credit life and credit disability insurance. The conditions of coverage for death of the insured by the insurer was that "upon receipt of due proof of the Debtor's death by any cause; . . . the Company will pay to the Creditor the amount for which such Debtor's life was insured at the time of his death . . . any amount so paid shall be applied against the unpaid indebtedness of the Debtor . . ."

On the same day the insured was killed under mysterious circumstances having his own pistol in his hand. The insurer refused to pay the beneficiary on the policy. His wife was appointed administratrix of his estate and on April 18, 1979, she sued the insurer after demand and refusal to pay the proceeds of the policy seeking also the statutory penalty and attorney fees.

The defendant answered denying the claim but admitted it had written the policy and that the insured died on June 13, 1977, and that it had refused to pay the creditor as beneficiary of the policy. Defendant also added a defense of fraud in that the insured had made application for the life insurance, concealing from defendant his intent to take his own life, hence the policy was obtained through fraud in the procurement and void.

A trial was held, and verdict was returned in favor of

plaintiff for $3,759.26, 25% bad faith penalty and attorney fees of $750. The judgment was in conformity with the verdict awarding plaintiff $3,759.26 plus $939.81 as bad faith penalty and $750 attorney fees. Defendant moved for new trial, which was denied after a hearing. Defendant appeals. *Held:*

Defendant by brief states it has no objection to the portion of the verdict and judgment as to the proceeds of the credit life insurance policy issued on the life of the decedent but confines its entire argument to the contention that no evidence was offered sufficient to authorize the trial court to submit the issue of bad faith and reasonable attorney fees to the jury in that there is absolutely no evidence of any bad faith on its part in denying the claim. At trial defendant made no exceptions to the trial court's charge. Nor did it make a motion for directed verdict on the issue of bad faith as well as attorney fees.

It now bases this contention upon an alleged suicide note which plaintiff found after she discovered her husband's body with his pistol in his hand and admitted in evidence. This note, signed by the deceased, indicates that one of his superiors with a railroad "has the hatchet out for me" and he couldn't go through it any more and maybe he was crazy "for doing this," with time on the note shown as "10:20 A.M." At least two witnesses testified they believed he committed suicide, but no other evidence was offered, and considerable testimony was offered showing the decedent was in good spirits, well off financially, and in good health, and in no way contemplating suicide.

Defendant now by brief waives any claim that the policy was procured by fraud, but contends plaintiff cannot collect for bad faith since its defense "was a reasonable defense which vindicates the good faith of the insurer," citing *Colonial Life &c. Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745), that is, defendant had a reasonable and probable cause to make the defense of fraud in the procurement even though the jury and trial court did not accept it. See *Interstate Life &c. Ins. Co. v. Williamson,* 220 Ga. 323 (138 SE2d 668); *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 765 (12 SE 18). However, this can only be determined from evidence that is relevant and

admissible for a determination of the case on its merits "made at the trial." See *Interstate Life &c. Ins. Co. v. Williamson,* 220 Ga. 323, 325, supra.

Here there was no exclusionary clause in the policy for death caused by suicide. The policy itself states it will pay upon proof of death "by any cause." No questions were asked the insured when he applied for insurance, and the evidence shows the decedent had announced both immediate and long range plans and was in good spirits shortly before his death. There was absolutely no evidence the insured contemplated taking his own life at the time he borrowed the money and took out the credit life policy. See *Power v. Liberty Nat. Life Ins. Co.,* 221 Ga. 305, 306 (144 SE2d 389). And in law there is a presumption against suicide. See *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, 771 (1) (119 SE2d 549). Here no cause of death was given. His death was admitted although two witnesses testified they believed he committed suicide and one gave the reasons for this belief. But defendant has admitted it, refused to pay on demand, still has not paid, and contends it was plaintiff's duty to prove it did so in bad faith. Its basis for refusing to pay was fraud in the procurement, yet it offered no evidence of fraud which would void the policy.

In order to show the contract as void, not only must the defendant show fraud and misrepresentation in the procurement by showing false representations were made by the insured, known to be false and made with intention to deceive, but the defendant must also exercise "due care to discover the fraud" and that it "relied upon the false representations to . . . [its] . . . injury." *Dr. Pepper Finance Corp. v. Cooper,* 215 Ga. 598, 601 (112 SE2d 585); *American Food Services v. Goldsmith,* 121 Ga. App. 686, 688 (175 SE2d 57). None of the above is present, hence there was sufficient evidence to show bad faith in its refusal to pay. See Code Ann. § 56-1206 (Ga. L. 1960, pp. 289, 502; 1962, p. 712).

*Judgment affirmed. Banke and Underwood, JJ., concur.*

SUBMITTED SEPTEMBER 26, 1979 — DECIDED OCTOBER 15, 1979.

*J. Madden Hatcher, Jr.,* for appellant.
*Thomas M. Flournoy, Jr.,* for appellees.